Good morning, Ms. Hathaway. Good morning, Your Honor. May it please the Court, if I could reserve one minute as rebuttal time. How much? One. Yes. The two pages of the issue were purported to be an airline's passenger manifest of an airline's flight from JFK to Japan in 1991. The document had to be what it was purported to be, and the names had to be accurate for it to be relevant at all. A little bit of the procedural history, because that's interesting. The trial court initially excluded the pages, basically deciding that if the airline was not requesting passports, driver's licenses, or birth certificates, then nobody could possibly know who was on the flight. He considered that nobody really cared who was on the flight, and he knew the passengers could have actually been anybody who read about the crime in a newspaper. The two CLX pages themselves, the airline's name was not indicated, the date's incomplete, the list is obviously only a partial list, and Tran is the single most common Vietnamese name that there is. So the original trial court was correct in excluding the passenger manifest, alleged passenger manifest. The Commonwealth took the case to the single justice, and the single justice presumed that the names would be reliable if they were authenticated. The single justice allowed the admission, contended upon the establishment of the foundation. So both of them were extradited? From Hong Kong. So they got there somehow? That's true. That's true. Contorino, the United Airlines employee, testified that he had not produced these documents. And didn't he admit that they had flown over? Did Contorino admit that they had flown over? No, the defendants. I think they were extradited from there. They had to have flown over. So what's the point? The point was that this was immediately after the crime and that all three of them were traveling together. If they were the people on that airplane. So if there's other evidence in the record to suggest that they were extradited from there? I don't remember exactly, but they were definitely extradited. Anyway, Contorino testified that he didn't produce the documents. Didn't have any knowledge as to whether they came from a United Airlines computer. He didn't know where they came from. At the time of the flight in 1991, Contorino was only 13 years old. He had no knowledge of anything that had to do with creating United Airlines procedures and creating flight records or business records. Nor did he have any knowledge of the computer systems that they used. Because of the procedural posture, this case is in unhabeas review. That's right. You need to establish that what the Massachusetts courts did ran headlong into what the Supreme Court has said you shouldn't do or it's an unreasonable application. Exactly. So is it Crawford or what Supreme Court case are you relying on? I would be relying on Diaz. Okay. And then that's not on all fours with this. It's not. Isn't that a big problem for you that it's not on all fours? Well, I think that certainly everyone argues that there's no exactly on point Supreme Court case. They couldn't find one. I couldn't find one. I would suggest that I would leave the court to Justice Stevens' concurrence in Carey v. Musladin, which is 549 U.S. 70. It's instructive. Is that a good brief? I don't think that it is. Then you better write a letter. I will. I will. In that case, this is Stevens' concurrence, it's a Strickland case and it's a habeas case. And he basically says that Strickland, the case of Strickland, which has been relied upon in habeas cases for then it was 20 and now it's 30 years, that case, the very narrow holding, was not exactly what it's been relying on. And Justice Stevens says that virtually every Supreme Court opinion in the application of the constitutional principle contains the explanatory language and the dicta, and that's what she was from Strickland. And so I think that this is a different context from what I understand, that's for sure. Let me ask you about another question because I'm not understanding one thing. What we're talking about from a federal constitutional perspective, the key question is whether the evidence admitted was testimonial. You're talking a lot about whether it was authentic. Aren't those different issues? Well, they are slightly different issues. If it's not testimonial for purposes of this particular case, we don't care whether it's authentic or not, do we? Well, I think you do care whether it's authentic because basically it's not. If it's not testimonial, why would we care? If it's not testimonial, I guess what the SJC said, what the district court said was that the pages were not testimonial because they were created to facilitate billing and to comply with federal FAA requirements and not with an eye towards prosecution. That's absolutely true, except that in this case, even if it was non-testimonial, I think that it still has to be authenticated. There had to be a foundation laid for the evidence to even be admitted. So if the SJC somehow misinterpreted its evidentiary laws, why is that a federal concern? Well, the SJC was also asked to make a decision under the Sixth Amendment, and they basically said not only was it not admissible as a business record under the evidentiary laws, but the admission did not violate trans rights pursuant to Crawford or to Munoz-Diaz. Because they said it's not testimonial. That's right. So the fact that it's not non-testimonial, your argument is that it's premised on a faulty evidentiary ruling. Exactly. But that's a state court ruling that we don't even... The evidentiary ruling is really not the issue here. The issue is that the defendant... The foundation is an evidentiary ruling. Lack of a proper evidentiary foundation is an evidentiary ruling, which is what you're arguing. That's exactly right, but I'm also arguing that the defendant was denied at trial his opportunity to cross-examine a person who had any familiarity at all with this document. Between the time of the incident in 1991 and the time that Mr. Tran was indicted in 1999, that was only eight years. You don't even realize he could have found someone in those... It's not a long time. But that presumes it's testimonial. So back to the testimonial question. How do you, for 200-plus years, courts have been admitting hotel registers... That's right. ...to simply show the fact that a person's name is written in the register, not for the truth of whether it was the person who gave that information. If those aren't... I don't understand you to be saying those are testimonial. Maybe you are, in which case you should explain that. But if those aren't, how is this? Well, I don't think that this was prepared in anticipation of trial. But I also question whether it was an authentic business record. Now you're back to Judge Thompson's point, which is I don't think we're sitting here reviewing what Massachusetts has decided to do with its rules of evidence except to the extent they start talking about admitting testimonial evidence without cross-examination. Exactly. I guess the answer really is that I agree with you, it's not prepared for trial. But the fact that it's not a business record, even an authenticated business record, it should not be admitted. And again, the defendant was denounced. What constitutional rule does it violate? Well, I think it violates 6th Amendment right to confront a witness who had any knowledge at all of a document. And that's the... It would be Melendez-Diaz. A lack of ability to cross-examine someone who had some knowledge of exactly what the document was purported to be or what the document was offered for. So are there no more questions? Thank you. Mr. Boshie, good morning. Good morning. May it please the Court, my name is Thomas Boshie and I represent the respondent, Gary Roden. I'll make three points. The first is that there is no clearly established Supreme Court case dealing with a document like this. In the cases between Crawford and Bowcoming, Bowcoming being the last Supreme Court decision before the SJC issued the one here at issue, dealt with statements made either to law enforcement officers or information generated by or at the behest of law enforcement officers. There hasn't been a case where it's been a piece of evidence or a statement held by a private entity here, such as United Airlines. In fact, until just last year in Ohio v. Clark, we didn't know what the Supreme Court thought about statements to private parties and the applicability of the Confrontation Clause. How did this piece of paper get generated? There's not evidence as to how it was generated. Conorino testified that the manifest and the ticket inquiry are generated routinely for every flight, for FAA purposes, billing purposes, and to help the crew. In other words, do we know whether your witness went back and found a piece of paper that had been sitting there for years, or your witness went back and queried the data system to generate a piece of paper? The witness, Conorino, testified that he didn't generate these two documents, that the transcript volume that's marked, Guardier David Conorino, explains that a Boston police officer got the two documents in 1991. Conorino wasn't involved in that. And so we don't know whether the officer asked the airline to give a document that it had there, or whether it asked to generate a search to find some information. That's correct. Even if the officer had asked the airline to generate the format and direct the court to the Fuji case that's cited in the briefs, that case says that even there the INS agent requested that the documents it issued be generated from the computer, and the court said that the request to generate didn't destroy the business character of the record it issued. The second point that I was, just to finish the first point, all the signals that we do have from the Supreme Court suggest that these documents fall outside the confrontation clause. There are the repeated references to business records, and also in Melendez-Diaz the court signaled that muster lists, vestry books, and prison logs, similar to these, would be outside the confrontation clause. The second point is quicker. The documents here just aren't testimonial. I believe the counsel just agreed that they were not prepared in anticipation of any kind of criminal litigation. And the final point is that this just, in terms of homelessness, this was not a close evidence case. There were two eyewitnesses to the shooting. Lee and Young both testified that these two individuals came in and shot the five victims here. And for forensic evidence, in terms of entry wounds, gunshot residue, confirmed the close shooting in the chaotic scene. The jury saw a video of the scene to confirm, or so they were able to confirm, that the story about what happened inside the gambling parlor was accurate. Unless the court has other questions, the respondent will rest on the brief. Thank you. Thank you. If I could just very briefly go back to Melendez-Diaz. And the quote from Melendez-Diaz teaches that hearsay documents, in order for them to be admissible as business records, their authors must be subject to confrontation. And that just didn't happen here. The author of this document was not subject to confrontation. And I think for that reason, the Sixth Amendment is implicated. If it wasn't testimonial, and you seem to agree to that, what difference does it make? Well, it should not have come in, because it did come in. And so his ability to cross-examine. Why would the author be required to come in if it wasn't testimonial? But he should have been subject to cross-examination. If the court has nothing further, thank you. And business records are generally admissible through custodians or people with sufficient information. And so the government's argument is that the witness that they produced, although it may not have technically been the so-called keeper of the records, was sufficiently familiar with these particular documents to be able to sufficiently identify them as their airline documents. What's wrong with that? Well, he was not sufficiently familiar. There were certain airline numbers. There were other markings that he said indicated that they were airline documents. Well, I think the dramatic courtroom display that the defense counsel basically admitted 20 copies of what appeared to be. And the witness said, this appears to be exactly what I testified to before. And he said, and then he was asked, would you authenticate this as a business record? And he said, yes. And then the prosecutor realized that the judge's name had been put onto the same passage of the manifest. And so how easy it is to manipulate just a zero-ounce copy of something when the witness doesn't know anything about it. Thank you.